**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

| | |
|---|---|
| CARGILL, INCORPORATED,<br><br>                    Plaintiff,<br><br>vs.<br><br>BIODIESEL OF LAS VEGAS, INCORPORATED,<br><br>                    Defendant. | Case No:  2:09-cv-02134-JCM-RJJ<br><br>**REPORT AND RECOMMENDATION<br>OF UNITED STATES<br>MAGISTRATE JUDGE**<br><br>(Plaintiff Cargill, Incorporated's Application<br>to Compel Arbitration (#1)) |

   This matter comes before the undersigned Magistrate Judge on Plaintiff's Application to Compel Arbitration (#1).  The Court reviewed Plaintiff's Application to Compel Arbitration (#1), Memorandum in Support (#4), Defendant's Opposition (#14), and Plaintiff's Reply (#17).

**BACKGROUND**

   This case is about whether an arbitration clause in an alleged contract for sale of goods is enforceable between the parties.  Plaintiff, Cargill, alleges that a contract for sale of three million pounds of soybean oil at $.060 per pound was entered into on May 2, 2008, between Cargill and Biodiesel of Las Vegas (Biodiesel).  Defendant sent a letter dated October 18, 2008, asserting that a contract never existed between the parties.  Plaintiff considers that letter a breach.  No deliveries of soybean oil were sent or requested.

   The alleged contract originated after an exchange of emails and telephone conversations between Biodiesel employee, Laura Latimer, and Cargill employee, Mark Jirik.  Latimer and

Jirik discussed price, quantity, and Biodiesel's financial information. No other topics were discussed.

Following their standard practice, Cargill sent Biodiesel two copies of a signed "contract confirmation." Biodiesel was to sign both copies and return one to Cargill and retain the other for their own records. Biodiesel never signed and returned a contract confirmation to Cargill. The contract confirmation contains a provision that states that "all disputes ... shall be resolved by binding arbitration in accordance with the rules of the association listed on the reverse [of that document]." Sale Contract, attached as Exhibit C to Memorandum (#4) at 1 ¶ 2. The parties dispute whether that language is ambiguous and vague.

In September 2008 the price of soybean oil fell. On September 25, 2008, Latimer contacted Jirik to determine whether Biodiesel could carry one million pounds of soybean oil into January 2009 for $0.01 per pound, whether they could spot price a few shipments, and how either arrangement might affect the quantity in the current contract. After some email exchanges on those subjects between Latimer and Jirik, no final decision was ever made. The price of soybean oil continued to fall. On October 16, 2008, Biodiesel wrote a letter to Cargill asserting that the May 2008 agreement had never been made.

In March 2009, Cargill filed a motion to compel arbitration in the District of Minnesota that was eventually dismissed on Biodiesel's motion for lack of personal jurisdiction. *Cargill, Inc. v. Biodiesel of Las Vegas, Inc.*, Slip Copy, 2009 WL 3164761 (D. Minn. 2009). Cargill then filed an Application to Compel Arbitration in this Court.[1]

### DISCUSSION

On a Petition for Order to Compel Arbitration, the Court's role under 9 U.S.C. § 4 is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. 9 U.S.C. § 4; *Chiron Corp. V. Othro Diagnostics Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the Court is "satisfied that the

---

[1] Pursuant to 9 U.S.C. § 4, a more apt name for this pleading would be "Petition for Order to Compel Arbitration."

2

making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. *Id*.

**I. Whether a Valid Agreement Exists**

It is axiomatic that "arbitration is a matter of contract and a party cannot be required to submit any dispute which he has not agreed so to submit." *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007) (quoting *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986)). The Court decides the threshold issue regarding the existence of a contract. *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., Inc.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991) (holding that otherwise Party A could forge Party B's name on a contract and force them to arbitrate the genuineness of its signature).

Cargill asserts that a valid contract exists between the parties because (1) both parties are merchants, (2) Cargill sent a confirmation contract within a reasonable time, (3) Biodiesel had reason to know of the confirmation's contents, and (4) no notice of objection was received. Biodiesel argues that no valid contract exists because Biodiesel never signed this or any other confirmation contract sent by Cargill. Therefore Biodiesel never agreed to the sales contract, nor its arbitration provision. In the alternative, Biodiesel asserts that the arbitration provision constitutes a material alteration to the agreement, and is therefore not a part of the contract.

The Court finds that there was a valid contract between Cargill and Biodiesel. Both Minnesota and Nevada law provide that there is an enforceable contract:

> " Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection 1 against such party unless written notice of objection to its contents is given within 10 days after it is received."

Minn. Stat. Ann. § 336.2-201(2); Nev. Rev. Stat. § 104.2201(2).

Therefore, a valid contract exists if (1) the parties are merchants, (2) a writing in confirmation of the contract and sufficient against the sender is received within a reasonable time, (3) the

receiving party has reason to know of the contents of the confirmation contract, and (4) no written notice of objection is given within 10 days of receipt of the confirmation contract.

Here, both Biodiesel and Cargill are merchants. Minn. Rev. Stat. § 336.2-104(1); Nev. Rev. Stat. 104.2104(1). Biodiesel received a signed confirmation contract from Cargill within a reasonable time. Affidavit of Becky Fortin at 3 ¶4(a), attached as Exhibit B to Memorandum (#4) and Sale Contract, attached as Exhibit C to Memorandum (#4). Biodiesel allegedly had reason to know of the contents of the confirmation contract because they had received a similar confirmation from Cargill many times. Order, attached as Exhibit 3 to Opposition (# 14). In fact, the reason Biodiesel refused to sign the contract was because it contained both an arbitration provision and a Minnesota choice of law provision. Declaration of Laura Latimer at 3 ¶5, attached as Exhibit 1 to Opposition (# 14). Biodiesel never sent a written notice of objection to the contract or any of its provisions, including the choice of law and arbitration clauses. Affidavit of Becky Fortin at 2 ¶5, attached as Exhibit B to Memorandum (#4).

Furthermore, the September 2008 email exchange between Latimer and Jirik shows that Biodiesel considered the May 2008 contract to be valid. Emails, attached as Exhibit F to Memorandum (#4) at 1-2. Therefore, this Court finds that a contract did exist between Cargill and Biodiesel.

**II. Whether the Arbitration Clause Became Part of the Contract**

Challenges to the arbitration clause of a contract are settled by the Court. *Sanford*, 483 F.3d at 962. To evaluate the validity of an arbitration agreement, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). However, issues regarding the validity or enforcement of an alleged contract should be referred to the arbitrator. *Sanford*, 483 F.3d at 962; *See also Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006) (holding that the issue of a contract's validity is different from the issue whether any agreement was ever concluded). If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. 9 U.S.C. § 4.

Under Minnesota and Nevada law, "between merchants ... [additional] terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) They materially alter it; or (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received. Minn. Stat. Ann. § 336.2-207(2); Nev.Rev.Stat. § 104.2207(2). Only subsection (b) is at issue here.

Biodiesel argues that the arbitration clause materially alters the terms of the offer. The question whether an additional term in a written confirmation constitutes a material alteration is a question of fact to be resolved by the circumstances of each particular case. *N & D Fashions, Inc., v. DHJ Industries, Inc.*, 548 F.2d 722, 726 (8th Cir. 1976) (quotations omitted). An agreement is materially altered if an addition would result in surprise or hardship if incorporated without express awareness by the other party. *TRWL Financial Establishment v. Select Intern, Inc.*, 527 N.W.2d 573, 579 (Minn. Ct. of App. 1995). "Forum selection clauses can result in surprise and hardship if permitted to become effective by way of confirmation forms that are all too often never read." *Id*.

In *N & D Fashions*, N & D entered into an agreement to purchase fabric from DHJ. Both sent purchase orders and documents back and forth, which were signed by the parties. *N & D Fashions*, 548 F.2d at 724. DHJ's documents contained an arbitration clause. *Id*. N & D argued that the arbitration clause materially altered the agreement. *N & D Fashions*, 548 F.2d at 726. The court held that the arbitration clause did not materially alter the agreement because it was common in the textile industry for purchase orders and contracts to contain arbitration clauses and because N & D signed the documents containing the arbitration clause. *Id*.

In *TRWL*, Select entered into a contract to supply pajamas to TRWL for eventual overseas sale. *TRWL*, 527 N.W.2d at 575. Both Select and TRWL were Minnesota corporations. *Id*. Select contacted Superior, a New York corporation, to purchase 127,000 pairs of pajamas. *Id*. As part of the transaction, Select faxed a purchase order to Superior which included a forum selection clause. *TRWL*, 527 N.W.2d at 578. Select signed the order, Superior did not, but Superior shipped the goods without objecting to the forum selection clause. *Id*. The court held that the forum selection clause materially altered the contract because it worked a surprise on

1  Superior. *TRWL*, 527 N.W.2d at 579. The transaction at issue was the first transaction between
2  Select and Superior, and the forum selection clause was illegible.
3  *TRWL,* 527 N.W.2d at 575, 580.
4        Here, it is clear that Biodiesel had no reason to be surprised by the arbitration clause.
5  Unlike the situation in *TRWL* where the parties had never conducted business together, Biodiesel
6  and Cargill began their relationship in 2005, three years before the instant dispute arose.  Jirik
7  Affidavit at 2 ¶6 , attached as Exhibit A to the Memorandum (#4). They have engaged in a
8  number of transactions together. *Id*. Biodiesel never signed any of Cargill's forms, but they also
9  never objected to any of Cargill's terms. Jirik Affidavit at 2 ¶9. In fact Biodiesel allegedly did
10 not sign Cargill's forms because they knew it contained an arbitration clause. Latimer Affidavit
11 at 2 ¶6, attached as Exhibit 2 to the Opposition (#14). The arbitration clause in Cargill's form is
12 clearly legible. *See* Sale Contract at 1 ¶2, attached as Exhibit C to Memorandum (#4). Both
13 Minnesota and Nevada law provide a legal mechanism for Biodiesel to object to any previously
14 undiscussed terms found in a confirmation contract, but  Biodiesel failed to do so. Minn. Stat.
15 Ann. § 336.2-201(2); Nev. Rev. Stat. § 104.2201(2). Furthermore, similar to the factual situation
16 in *N & D*, it is standard practice in the soybean oil industry for sale contracts to include
17 arbitration provisions. Sanchez Affidavit at 1 ¶4, Attached as Exhibit B to Reply (#17).
18       Biodiesel argues that absent a clear indication of intent, arbitration provisions constitute a
19 material alteration. Opposition (# 14) at 7. In support, Biodiesel cites *Gen. Instrument Corp., v.*
20 *Tie Mfg., Inc.*, 517 F. Supp. 1231, 1235 (S.D.N.Y. 1981). *Gen. Instrument*  relies on a 1978 New
21 York Court of Appeals case, *Marlene Industries Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327
22 (1978). *Marlene* instituted what came to be known as the "New York Rule," which provides that
23 "parties will not be held to have chosen arbitration in the absence of an express, unequivocal
24 agreement to that effect." *Kahan Jewelry Corp. v. Venus Casting, Inc.*, 17 Misc. 3d 684, 691,
25 847 N.Y.S.2d 366, 371 (N.Y. Sup. Ct. 2007) (quoting *Marlene,* 45 N.Y.2d at 408). The Second
26 Circuit has since held that the New York Rule is preempted by the Federal Arbitration Act.
27 *Progressive Cas. Ins. Co. v. C.A. Reasegudora Nacional de Venezuela*, 991 F.2d 42, 46-47 (2nd
28 Cir. 1993) (holding that the rule set forth in *Marlene* is preempted); *Aceros Prefabricados, S.A. v.*

1  *Tradearbed, Inc.*, 282 F.3d 92 (2nd Cir. 2002) (holding that arbitration agreements do not, as a
2  matter of law, constitute material alterations to a contract; rather the question is decided on a
3  case-by-case basis). Therefore, Biodiesel's reliance on *Gen. Instrument* is misplaced.

4  Biodiesel's reliance on *Cogent Computer Sys., Inc. v. Turbochef Technologies, Inc.*, 2008
5  WL 219343 (D.R.I. 2008) is also misplaced. In *Cogent*, the buyer, Turbochef, sent two separate
6  purchase orders. *Cogent* at *3-4. The first did not have an arbitration provision and the second
7  one did. *Id*. Turbochef argued that the two orders were actually one contract, while Cogent
8  maintained that they were separate. *Cogent* at *10-11. Because Cogent was a month late on
9  delivery, Turbochef terminated the purchase order, demanded contract damages, and petitioned
10 for an order to compel arbitration. *Cogent* at *4. The court held that the first purchase order
11 formed a valid contract and that the second purchase order was a proposal to modify the first
12 contract. *Cogent* at *10. Hypothesizing in the alternative, the court suggested that if the second
13 purchase order was considered a written confirmation of the first purchase order, then it would
14 cause surprise or hardship and therefore be a material alteration. *Cogent* at *12. However, in
15 doing so the court relied on the now preempted New York rule. *Id*.

16 Here, the facts more closely relate to a case distinguished by the court in *Cogent*. In *Dixie*
17 *Aluminum Prods. Co. v. Mitsubishi Int'l Corp.*, 785 F.Supp. 157 (N.D.Ga.1992) the parties had
18 engaged in twenty-two transactions over approximately three years using the same
19 documentation each time. *Dixie Aluminum*, 785 F.Supp. at 158. In each transaction the parties
20 would reach an agreement concerning the price, quantity, and terms of delivery for steel coils
21 being purchased by the plaintiff. *Id*. Before the delivery of the steel coils, defendant would send
22 a confirmation contract to plaintiff. *Id*. This latter document contained many additional terms,
23 including an arbitration provision. *Id*. The court held that where there were repeated
24 opportunities for objection, and yet no objection was made, the course of dealing bears on the
25 issue of unfair surprise. *Dixie Aluminum,* 785 F.Supp. at 160.

26 Biodiesel and Cargill began their business relationship in 2005 and have engaged in
27 dozens of sales agreements that have resulted in nearly 240 shipments of soybean oil. Jirik
28 Affidavit, attached as Exhibit A to the Memorandum (#4), at 2 ¶ 6. During that entire time,

1  Cargill sent confirmation contracts for each agreement.  Jirik Affidavit, at 2 ¶ 9.  Biodiesel never
2  signed any agreements from Cargill that contained an arbitration provision.  Latimer Affidavit,
3  attached as Exhibit 2 to the Opposition (#14), at 2 ¶ 6.  Despite that fact, the parties performed on
4  their past contracts.  Jirik Affidavit at 3 ¶ 12.
5      This Court finds that the arbitration provision became a valid part of the contract because
6  it does not materially alter the agreement and Biodiesel never objected to the provision.  Minn.
7  Stat. Ann. § 336.2-207(2); Nev.Rev.Stat. § 104.2207(2).
8  **III.  Failure to Comply**
9      Biodiesel failed to comply with the valid arbitration agreement when it sent the October
10 16, 2008, letter, disavowing the May 2008 agreement.  Letter, attached as Exhibit G to
11 Memorandum (#4) at 1.

## RECOMMENDATION

13  Based on the foregoing and good cause appearing therefore,
14  IT IS THE RECOMMENDATION of the undersigned Magistrate Judge that Plaintiff's
15 Application to Compel Arbitration (#1) be **GRANTED**.

## NOTICE

17  Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation**
18 **must be in writing and filed with the Clerk of the Court within 14 days of service of this**
19 **document.** The Supreme Court has held that the courts of appeal may determine that an appeal
20 has been waived due to the failure to file objections within the specified time.  *Thomas v. Arn*,
21 474 U.S. 140, 142 (1985).  This circuit has also held that (1) failure to file objections within the
22 specified time and (2) failure to properly address and brief the objectionable issues waives the
23 right to appeal the District Court's order and/or appeal factual issues from the order of the
24  District Court.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United*
25 *Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).
26  DATED this  8th  day of September, 2010.

27                                                                    _____
                                                                       ROBERT J. JOHNSTON
28                                                                     United States Magistrate Judge